UNITED STATES, Appellant

v

RONALD FAYE OLSON, Seaman Apprentice,
U. S. Navy, Appellee

UNITED STATES, Appellant and Cross-Appellee

v

HOWARD FRANCIS MARTIN, Seaman Apprentice,
U. S. Navy, Appellee and Cross-Appellant

7 USCMA 242, 22 CMR 32

Nos. 8336 and 8337

Decided August 10, 1956

*Major Verne L. Oliver*, USMC, argued the cause for Appellant, United States.

*Captain Robert M. Lucy*, USMC, argued the cause for Appellee, Accused.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

These cases were certified for review by The Judge Advocate General of the Navy. Although the charges against each accused and their respective trials are different, the principal question for

**243**

review in each case is the same. Accordingly, they were consolidated for argument and disposition.

Each accused entered a plea of guilty to the charges against him. No evidence was introduced by either side, and the court returned findings of guilty. After announcement of the verdict, the prosecution read the personal data from the charge sheet. This data includes the accused's age, his period of military service, contributions, if any, to his family, and the kind and length of pretrial restraint. See Manual for Courts-Martial, United States, 1951, Appendices 5 and 8a. In Olson's case, no evidence of previous convictions was presented, and he and other witnesses testified in mitigation. Additionally, his counsel made a statement in which he maintained that the accused's repentance and rehabilitation showed he was "still good material for the Navy," and that he merited another "chance to be a useful sailor." Over defense counsel's objection, trial counsel was permitted to make a statement "concerning the matters that are before the court in the charges and specifications and the quantum of punishment." In Martin's case, evidence of one previous conviction was introduced, but no mitigating evidence was presented. Without objection, trial counsel made a short statement on the charge and the previous conviction. He requested the court "to consider that here is a man who should have learned . . . the proper lesson."

With commendable concern for the accused's right to a sentence free from improper influence, the board of review held that while trial counsel can submit evidence to show aggravation of the offense or to rebut mitigating matter presented by the accused, he cannot argue on the quantum of the punishment that the court should adjudge. The board of review based its decision on two reasons: (1) Its construction of paragraph 75 of the Manual for Courts-Martial, supra, and (2) its belief that any argument on the sentence by trial counsel would be understood by the court members as an indication of the wishes of the convening authority. Other boards of review have held

the same way. United States v Goodwin, 7 CMR 471; United States v Kimler, 2 CMR 572. But some have reached a contrary result. United States v Weller, 18 CMR 473; United States v Rhine, 13 CMR 632. The Judge Advocate General has asked us to review this question. In each case the question is phrased somewhat differently but both frame the same issue, namely, is it error for trial counsel to present argument to the court members on the sentence it should adjudge?

A court-martial trial does not end with the verdict. It ends when the sentence has been finally adjudged. And, generally, the practice during the sentence procedure is the same as that during the proceedings before the findings. United States v Strand, 6 USCMA 297, 20 CMR 13. Consequently, in the absence of a clear prohibition to the contrary, counsel for each side would have the right to argue his view of the evidence which relates to the particular question to be decided by the court. See United States v Sizemore, 2 USCMA 572, 10 CMR 70. United States v McMahan, 6 USCMA 709, 21 CMR 31. In fact, paragraph 53g of the Manual provides that both parties are entitled to an opportunity to present their respective contentions upon any matter submitted to the court for decision. The purpose of counsel's argument on a question is to marshal the evidence and present it in a way that will help the court reach a just decision.

In the civilian criminal courts, the Government's lawyer, as well as the accused's, can argue on the quantum of the sentence to be adjudged. Noell v United States, 183 F2d 334 (CA 9th Cir) (1950), cert den 340 US 921, 71 S Ct 352, 95 L ed 665; Stephan v United States, 133 F2d 87 (CA 6th Cir) (1943), cert den 318 US 781, 63 S Ct 858, 87 L ed 1148, reh den 319 US 783, 63 S Ct 1172, 87 L ed 1727. True, in most instances, the trial judge, rather than the jury, determines the sentence; but the rule is the same even when the jury has a sentence function. 53 Am Jur, Trial, § 467. As the Supreme Court of Kentucky noted in Miller v

Commonwealth, 236 Ky 448, 33 SW2d 590, 591: "he [the prosecuting attorney] has a right to argue from the record, and upon reason, in such manner as he deems most persuasive, in favor of the severest punishment authorized by the law."

No provision of the Uniform Code relates to the specific question before us. Neither does any pro- vision in the Manual directly refer to the right of counsel to argue for a just sentence. We have already pointed out that paragraph 53*g* provides generally for the right to present a contention in regard to a matter submitted to the court for decision. The board of review, however, has construed paragraph 75 as limiting the general rule in connection with the sentence procedure. In part, paragraph 75 provides as follows:

"*c. Matter presented by the defense.*—(1) *General.*—Whether or not it introduced evidence on the issue of guilt or innocence, the defense may, after findings of guilty are announced and before the court closes to vote on the sentence, introduce matter in extenuation or mitigation. With respect to matter in extenuation and mitigation offered by the defense, the court may relax the rules of evidence to the extent of receiving affidavits, certificates of military and civil officers, and other writings of similar apparent authenticity and reliability. See 137 and 146*b* in this connection.

"(2) *Statement of accused.*—Whether or not he testified on the issue of guilt or innocence or as to matters in extenuation or mitigation, the accused may make an unsworn statement to the court in mitigation or extenuation of the offenses of which he stands convicted, but the right to make such an unsworn statement does not permit the filing of the affidavit of the accused. This unsworn statement is not evidence, and the accused cannot be cross-examined upon it, but the prosecution may rebut statements of fact therein by evidence. The statement may be oral or in writing, or both. It may be made by the accused, by counsel, or by both. *The statement should not include what is properly argument, but ordinarily the court will not stop a statement on that ground if it is being made orally and personally by the accused.*

"(3) *Matter in extenuation.*—Matter in extenuation of an offense serves to explain the circumstances surrounding the commission of the offense, including the reasons that actuated the accused but not extending to a legal justification. In this connection, see the illustration in the second subparagraph of 139*b*.

"(4) *Matter in mitigation.*—Matter in mitigation has for its purpose the lessening of the punishment to be assigned by the court or the furnishing of grounds for a recommendation for clemency. The fact that non-judicial punishment under Article 15 has been imposed and enforced against the accused may be shown by the accused as a factor in mitigation upon trial for an offense growing out of the same act or omission for which such punishment was imposed and enforced. See 68*g*. Such matter may include particular acts of good conduct or bravery. It may exhibit the reputation or record of the accused in the service for efficiency, fidelity, subordination, temperance, courage, or any other traits that go to make a good officer or enlisted person. For example, the accused may introduce evidence of the character given him on any former discharge from the military service, subject to the right of the prosecution to introduce in rebuttal evidence of the character given the accused on other discharges from the service." [Emphasis supplied.]

As we construe the underscored part of the Manual text, it does not prohibit final argument on the sentence. The entire paragraph is concerned with the presentation of evidence in extenuation or mitigation. It indicates that the facts can be presented in three ways: (1) By sworn testimony and documentary evidence which meet the requirements of the modified rules of evidence

**245**

applicable to the sentence procedure (cf. paragraph 75c(4) and paragraph 138f); (2) by affidavit, certificate, or other writing of similar apparent authenticity and reliability when the normal rules of evidence have been "relaxed" for the sentence proceedings (Manual, supra, paragraph 75c(1)); and (3) by an unsworn statement by the accused or his counsel, which, however, is not regarded as actual evidence.

Argument, of course, is not evidence. Good reason exists for the Manual draftsmen to include a reminder to that effect in connection with the use of an unsworn statement. Insofar as the first two methods of presenting evidence during the sentence procedure are concerned, the law officer can readily keep from the court members improper matter. As to the third, if the statement is in writing, the same control exists. However, if the statement is oral, it is usually made in narrative form. Interruption of the narrative is normally a disconcerting circumstance. To an untrained person, laboring under the stress of a conviction, an interruption of his narrative can be completely disorienting. Plainly recognizing this common experience, the Manual cautions the court against interrupting if the unsworn statement is being made by the accused personally. On the other hand, the accused's counsel, who normally will have had more experience and who is not personally affected by the findings of guilty, can be stopped and admonished against argument, without fear that the interruption will result in a disjointed or incomplete statement.

Neither the language nor the purpose of paragraph 75 of the Manual prohibits argument by counsel at the appropriate time. Its prohibition against argument by defense counsel in the unsworn statement of the accused is entirely consistent with the right to argue the quantum of punishment before the court members deliberate on the sentence. The unsworn statement is the accused's, not counsel's. In the atmosphere of the courtroom an accused may be unable to express his thoughts directly and clearly without help from his lawyer. Rather than allow the ac-

cused's personal inarticulateness to stand in the way of presenting a statement to the court-martial, the Manual authorizes his counsel to speak for him. This provision is intended to grant additional authority, not to limit counsel's ordinary right to marshal the facts for the court members' consideration of the question before them. And, since it is proper for defense to argue, the requirements of fair adversary proceedings would require that trial counsel be given an equal opportunity to present the Government's position. We conclude, therefore, that counsel for either side can make a separate argument for an appropriate sentence. Of course, the argument must be based upon the evidence adduced at the trial, and it cannot "go beyond the bounds of fair argument." United States v Day, 2 USCMA 416, 9 CMR 46.

Left for consideration is whether the relationship between trial counsel and the convening authority is such that the court members would conclude that counsel's argument reflects the wishes of the convening authority. We find no justification for that view.

At a trial, in no way and under no circumstances does trial counsel represent the convening authority as such. On the contrary, he represents the sovereignty of the United States. Manual for Courts-Martial, United States, 1951, paragraph 44d. United States v Valencia, 1 USCMA 415, 418, 4 CMR 7. His function is to present the evidence impartially and fairly. As the dissenting member of the board of review pointed out: "In the absence of any evidence or indication to the contrary, it must be assumed that . . . [he] endeavors to live up to this responsibility." See United States v Wilson, 4 USCMA 3, 15 CMR 3. Cf. United States v Coulter, 3 USCMA 657, 14 CMR 75. Certainly, trial counsel is appointed by the convening authority. That fact, however, does not give rise to an inference of control. The law officer, defense counsel, and even the members of the court are also designated by the convening authority for court-martial duty. The appointment does not make them instruments for

246

the imposition of the convening authority's will. Each has a separate duty to perform; and each must perform his duty free from any external influence or personal prejudice. United States v Deain, 5 USCMA 44, 17 CMR 44. We have no doubt it is common knowledge in the military community that none of the personnel appointed to a court-martial represents the convening authority and acts on his behalf. We are equally sure the members of a court-martial know that it would be unlawful for the convening authority to attempt to influence them in reaching a sentence, either by his own direct action or through the mediation of others. Article 37, Uniform Code of Military Justice, 50 USC § 612. United States v Littrice, 3 USCMA 487, 13 CMR 43. We hold, therefore, that nothing in the ordinary relationship between trial counsel and the convening authority justifies an inference that trial counsel's argument on the sentence reflects the wishes of the convening authority. In our opinion, the members of a court-martial would not, in the absence of other circumstances, regard the fact that the trial counsel has made an argument on the sentence as an indication that he is expressing the desires of the convening authority.

The certified question in each case is answered in the negative. In the Olson case, the board of review reduced the period of confinement from nine months to eight to remove "all prejudicial effect" of the supposed error. In the Martin case, the board of review determined that the convening authority's clemency action removed all possibility of harm. Since the board's action in each case presents no possibility of harm to the accused, and the interests of justice do not require prolongation of the review proceedings, we consider it unnecessary to return the records of trial to the boards of review for further consideration. At the same time, we want it clearly understood that we express no opinion whatever on the legal correctness of the board of review's conclusion in the Martin case that an error in the sentence procedure is cured by the clemency action of the convening authority. United States v Best, 6 USCMA 39, 19 CMR 165. The findings of guilty and the sentence in each case are affirmed.

Judges LATIMER and FERGUSON concur.