UNITED STATES

v.

**William E. PEGG, Jr., Yeoman First Class, U.S. Coast Guard.**

CGCM 9969.

Docket No. 846.

U.S. Coast Guard Court of Military Review.

23 Aug. 1983.

———

Defense Counsel: LT Robert W. Kelly, USCGR.

Appellate Defense Counsel: LCDR Robert W. Ferguson, USCG, LT Joseph F. Ahern, USCG, LT Dana J. St. James, USCGR.

Appellate Government Counsel: LT Christena G. Green, USCGR.

DECISION

MORGAN, Chief Judge:

Yeoman First Class William E. Pegg, Jr., USCG, was tried by a general court-martial comprised of a military judge and members 26 and 27 May 1982. He pleaded guilty to and was convicted of a charge and specification alleging aggravated arson on 24 January 1982 in violation of Article 126, Uniform Code of Military Justice, 10 U.S.C. § 926. He also pleaded guilty to and was convicted of larceny of $2500.00 from 1 July 1981 until 24 January 1982 in violation of Article 121, UCMJ, 10 U.S.C. § 921. The members sentenced the accused to be confined at hard labor for three years, to be reduced to pay grade E–3 and to be discharged from the service with a bad conduct discharge. The convening authority approved only so much of the sentence as provided for confinement at hard labor for one year, reduction to pay grade E–3 and discharge from the service with a bad conduct discharge.

Appellate defense counsel asserts that YN1 Pegg was denied effective assistance of counsel by the failure of defense counsel to challenge the admissibility of appellant's confession and by counsel's further failure to offer evidence from appellant's medical record in extenuation and mitigation. Appellate defense counsel also asserts that appellant was prejudiced by improper argument of trial counsel with respect to the sentence.

■ We have examined the trial counsel's argument respecting sentence considerations and find that it was neither inflammatory nor beyond the bounds of permissible comment on the information before the members of the court. See *U.S. v. Olson,* 7 U.S.C.M.A. 242, 22 C.M.R. 32

(1956); *U.S. v. Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956); *U.S. v. Campbell,* 8 M.J. 848 (C.G.C.M.R.1980). We are bolstered in this conclusion by the absence of any objection to the argument by trial defense counsel. See *U.S. v. Doctor, supra; U.S. v. Pinkney,* 22 U.S.C.M.A. 595, 48 C.M.R. 219 (1974).

YN1 Pegg was charged with stealing $10,223.99 from the Coast Guard Group Eastern Shore Exchange and with setting fire to the Exchange located in the Group Eastern Shore Administration Building before the report of an inventory revealing the shortage of funds had been completed. The accused had served as Exchange Operator from about 1 July 1981 until the fire in the Exchange on 24 January 1982. The government's evidence in support of the charges consisted of an inventory establishing the shortage; evidence of YN1 Pegg's responsibility for the account; evidence that he had recently made some rather substantial cash purchases; strong circumstantial evidence that the fire in the Exchange was of incendiary origin; strong circumstantial evidence that the accused had departed the closed Exchange just minutes before the fire was discovered; a clearly admissible admission by YN1 Pegg that he had been in the Exchange to pick up some papers shortly before the fire was discovered; and, admissions by the accused to taking Exchange funds and setting the fire. These latter admissions were made to Coast Guard Special Agents Rayfield and McGrath during interrogation of the accused on 28 January and 2 February 1982.

■ Appellant's present claim of inadequate representation is based primarily upon trial defense counsel's failure to pursue a motion for suppression of the admissions made to Special Agents Rayfield and McGrath.

The testimony of agents Rayfield and McGrath during the Article 32, UCMJ, investigation of charges revealed that they interrogated the accused for about two and a half hours commencing at approximately 1600 hours on 28 January 1982. At the outset the accused was fully advised of his Article 31, UCMJ, 10 U.S.C. § 831, rights and acknowledged his understanding of those rights. The accused waived his right to consult with or have counsel present during the interrogation.

Initially the accused denied any involvement in the larceny and arson. The Special Agents admitted that during the course of the interrogation Rayfield frequently spoke to the accused in loud tones, referred to him as a "little _____ liar," made some statement tending to characterize the accused as a "child beater," slammed a file folder down onto the table at which the accused was seated, then slapped his hand on the folder possibly striking the accused's arm when he reached for it. Finally, Rayfield left the interrogation room in exasperation for about five minutes. During his absence the accused made an incriminating statement to McGrath respecting the fire in the exchange. Following Rayfield's return to the interrogation room the accused made additional incriminating statements respecting both the arson and the larceny. The interrogation was terminated when the accused became emotional while talking about the fire and the possible dangers it posed for other Coastguardsmen who were on duty in the Administration Building. There is no indication that loud or abusive tactics were utilized on 2 February when the accused made additional admissions to agents Rayfield and McGrath again following proper advice respecting his Article 31 and counsel rights.

Defense counsel filed a timely motion pursuant to Rule 304(d) of the Military Rules of Evidence to suppress the statements made by the accused to Agents Rayfield and McGrath on the ground that the statements had been obtained through coercion and unlawful influence in violation of Article 31(d), UCMJ. This motion was not pursued at trial and the accused pleaded guilty to aggravated arson as charged and to stealing the lesser sum of $2500.00 under the larceny charge.

After the adequacy of his performance at trial had been placed in issue, trial defense counsel executed an affidavit dated 11 February 1983 which was attached to the government's response to the appellant's assignments of error. This affidavit discloses thorough inquiry by defense counsel into the evidence and the law relating to the admissibility of the admissions made by the accused to agents Rayfield and McGrath. The affidavit also reveals that defense counsel after informing himself with respect to the expected evidence and the law, then carefully evaluated with the accused the prospects of prevailing on the motion to suppress and the likelihood that the accused would be convicted of the charges even if the admissions were suppressed. The chances of prevailing on the motion to suppress were considered to be poor and the chances of being convicted were considered to be good. On the basis of this evaluation the accused and defense counsel agreed that the best strategy was to seek an informal agreement with the convening authority to accept pleas of guilty to simple arson and to larceny of the lesser sum of $2500.00.

Defense counsel approached the trial counsel and informed him that the accused would be willing to withdraw the motion to suppress his statements made to agents Rayfield and McGrath and plead guilty to the lesser offense of simple arson and to the lesser amount under the larceny charge if the convening authority would be willing to accept the pleas to those lesser offenses. The trial counsel ascertained that the convening authority would be agreeable to accepting the guilty plea to the lesser amount under the larceny charge but would not be agreeable to reduction of the arson charge. This information was conveyed to the defense counsel.

Defense counsel informed the accused of the convening authority's response to the informal offer to plead guilty. The accused informed defense counsel that he desired to plead guilty on the conditions informally agreed to by the convening authority.

From that point defense counsel's efforts were devoted principally to presenting the accused to the court as a repentant wrongdoer not deserving severe punishment.

The Court of Military Appeals has found an accused to have been inadequately represented in various situations including a case in which the government's evidence clearly raised the issue of entrapment but the defense counsel did not interpose that defense. See U.S. v. Horne, 9 U.S.C.M.A. 601, 26 C.M.R. 381 (1958). The Court has also found inadequate representation in a case involving defense counsel's failure to object or move to strike the damaging testimony of a witness called by the government in rebuttal when the witness claimed his privilege against self incrimination as the basis for refusing to answer questions by the defense counsel on cross-examination. U.S. v. Rivas, 3 M.J. 282 (C.M.A.1977). In this latter case the Court stated the rule for testing adequacy of representation which may be paraphrased as follows:

An accused tried by a general or special court-martial is entitled to the assistance of an attorney of reasonable competence who exercises the customary skill and knowledge normally prevailing within the range of competence demanded of attorneys in criminal cases.

See also U.S. v. Walker, 21 U.S.C.M.A. 376, 45 C.M.R. 150 (1972).

In both U.S. v. Horne and U.S. v. Rivas the accused denied his guilt. In Horne the government's own evidence revealed that the accused's unlawful conduct may well have been induced by the government, yet defense counsel did not raise the issue of entrapment. In Rivas the government's evidence was far from compelling and the accused was denied his fundamental right to cross-examine the witness whose rebuttal testimony may well have tipped the scales against him, yet his defense counsel interposed no objection or motion to strike. In each case defense counsel's failure to act

may have contributed to the conviction of an innocent defendant.

In the case before us the government's evidence supporting the charges was strong, the accused admitted his guilt and the prospects that the defense might prevail on a motion to suppress the incriminating statements made to Agents Rayfield and McGrath appeared to be poor. Defense counsel carefully and professionally weighed the various options with his client. The record reveals that he was familiar with the applicable law and we are unable to fault his evaluation of the available evidence or the probable outcome of a motion to suppress. Under these circumstances "[W]e will not second-guess the strategic or tactical decisions made at trial by defense counsel." *U.S. v. Rivas* at 3 M.J. 289.

Appellate defense counsel or another attorney detailed to defend YN1 Pegg may have advised a different strategy. Yet we are convinced that the decision to forego litigation of the suppression motion, plead guilty on the basis of the informal arrangement with the convening authority and seek to minimize the sentence was an entirely reasonable strategy in this case. The record of trial and defense counsel's affidavit reveal thorough familiarization with the law and the evidence involved in the case, exploration of all apparent defenses including that of lack of mental responsibility, preparation of the case in extenuation and mitigation, active representation at trial and submission of a petition for clemency signed by two members of the court after the trial. The accused has not been denied representation by counsel exercising "the customary skill and knowledge which normally prevails within the range of competence demanded of attorneys in criminal cases" either with respect to the determination of his guilt or innocence or with respect to the sentence. *U.S. v. Walker* and *U.S. v. Rivas,* both supra; *U.S. v. Jefferson,* 13 M.J. 1 (C.M.A.1982). See also *U.S. v. Horne,* supra; *U.S. v. Huff,* 11 U.S.C.M.A. 397, 29 C.M.R. 213 (1960).

The findings of guilty and the sentence approved on review below are affirmed.