UNITED STATES

v.

Charles W. DAVIS, Lieutenant
Commander (O–4), U.S.
Navy.

NMCCA 9600585.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 29 June 2006.

Decided 30 Aug. 2007.

Lt Richard McWilliams, JAGC, USN, Appellate Defense Counsel.

LCDR J.A. Thomas, JAGC, USN, Appellate Government Counsel.

Lt Jessica Hudson, JAGC, USN, Appellate Government Counsel.

Before RITTER, Chief Judge, FELTHAM, Senior Judge, and WHITE, Appellate Military Judge.

WHITE, Judge:

This case is before us, pursuant to Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c), for review of the sentence adjudged at a rehearing on sentence, as approved by the convening authority (CA). The findings have previously been affirmed. We considered the record of trial, the appellant's two assignments of error, the Government's answer, and the appellant's reply. We conclude the sentence is correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. See Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. Procedural History

In 1995, a general court-martial convicted the appellant, contrary to his pleas, of rape and forcible sodomy of a child under 16 years of age, and rape and forcible sodomy, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920 and 925. Pursuant to his pleas, the appellant was also convicted of taking indecent liberties and committing indecent acts with a child under 16 years of age, and taking indecent liberties and committing indecent acts, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court-martial sentenced the appellant to be confined for life and to forfeit $2,500.00 pay per month for 24 months. The CA approved the sentence as adjudged, but suspended the forfeiture of pay on condition the appellant provide his military pay and allowances to his wife.

This court affirmed the findings and sentence, United States v. Davis, 47 M.J. 707 (N.M.Ct.Crim.App.1997), but the Court of Appeals for the Armed Forces (CAAF) set aside our decision and remanded for a hearing, pursuant to United States v. DuBay, 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967), into allegations of ineffective assistance of counsel. United States v. Davis, 52 M.J. 201 (C.A.A.F.1999). Following the DuBay hearing, this court again affirmed the findings and sentence. United States v. Davis, No. 199600585, 2003 WL 21789030, 2003 CCA LEXIS 161 (N.M.Ct.Crim.App. 24 Jul 2003). CAAF then affirmed this court's decision with respect to the findings, but, set aside our decision on the sentence, and remanded, authorizing a rehearing on sentence. United States v. Davis, 60 M.J. 469 (C.A.A.F.2005).

A rehearing on sentence was held beginning 23 June 2005. The defense moved to dismiss the charges for lack of jurisdiction, based on the appellant's administrative separation from the naval service following his conviction. The military judge granted the motion, and the Government appealed. On appeal, this court reversed the trial court's order of dismissal. United States v. Davis, 62 M.J. 533 (N.M.Ct.Crim.App.2005). CAAF subsequently affirmed our decision. United States v. Davis, 63 M.J. 171 (C.A.A.F.2006). The rehearing then resumed.

On 29 June 2006, a general court-martial composed of officers sentenced the appellant to be confined for 20 years, to forfeit all pay and allowances, and to be dismissed from the naval service. Pursuant to RULE FOR COURTS-MARTIAL 810(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), the CA approved a sentence of 20 years confinement.

The appellant originally assigned 13 errors when his case first came before this court. He assigned four supplemental errors following the *DuBay* hearing. All of those 17 assignments of error are now moot by virtue of either CAAF's affirmance of the findings, or the conduct of the new sentencing hearing. The appellant has, however, assigned two new supplemental errors. First, he contends the military judge erred by limiting evidence at the presentencing hearing to facts in existence on or before the date of the original presentencing hearing, i.e., 22 September 1995. Second, he argues he has been denied speedy post-trial review.

## II. Limits on Evidence at Rehearing on Sentence

### A. The Facts

Before seating the members for the rehearing, the military judge asked for, and received from the parties, memoranda of law addressing whether evidence should be limited to facts existing at the time of the original presentencing proceedings. The appellant contended the purpose of the rehearing was to restore him to the place he would have occupied in 1995 had there been no error, and it would unfairly prejudice him to permit evidence of facts that did not exist at the time of the original hearing. The defense counsel explicitly assured the judge his position was not inconsistent with his intention to call members of the appellant's family to testify. Record at 694–95.

Subsequently, the military judged informed the parties he intended to instruct the members to conduct themselves as if it were 22 September 1995. When he then asked the parties if they had any objection, both the trial counsel and the defense counsel responded "no, sir." *Id.* at 822–23. The military judge then instructed the members

as he had indicated. The defense did not object.

During the testimony of Ms. Catherine Hollomon, the appellant's daughter, the defense counsel asked if any of Ms. Hollomon's brothers or sisters were unable to travel to Norfolk for the rehearing. The trial counsel objected. The military judge sustained the objection on the grounds that, because the family was living in the local area in September 1995, the ability of siblings to travel to the site of trial would not have been an issue at the original trial. *Id.* at 889. Later, the defense counsel asked what it would mean to Ms. Hollomon's family to have her father home. Again the trial counsel objected. The military judge *overruled* the objection, but reminded the members the purpose of the hearing was to step back to 1995. *Id.* at 894.

The defense also called Major (Maj) Michael Davis, USA, the appellant's son, and Lieutenant Colonel (LtCol) Cecil Davis, USAF (Ret.), the appellant's elderly father, to testify. Maj Davis testified the appellant's conviction had been difficult on the entire family and having him home would help the family to heal. *Id.* at 902–03. There were no objections to any of Maj Davis' testimony. LtCol Davis testified his health was fragile, he relied heavily on his children and grandchildren to take care of him, and having the appellant home would be a big help. *Id.* at 881–83. At the conclusion of his testimony, a member asked if LtCol Davis had had contact with the appellant, by visits, telephone calls, or letters, during the appellant's incarceration. The trial counsel objected, and the military judge sustained the objection. Appellate Exhibit CIII.

### B. Principles of law.

There is very little guidance on whether there is a temporal limit on evidence that may be considered at a rehearing on sentence. R.C.M. 1001 defines the types of evidence admissible on presentencing, but is silent about whether there is any temporal limit at a rehearing on sentence. The rule permits the Government to introduce evidence of "any aggravating circumstances." R.C.M. 1001(b)(4). It also permits the de-

fense to "present matters in extenuation and mitigation," and defines "mitigation" as evidence "introduced to lessen the punishment ... or to furnish grounds for a recommendation of clemency." R.C.M. 1001(c)(1)(B).

Likewise, R.C.M. 810, which sets out procedures for rehearings, does not explicitly address whether there is any temporal limit on presentencing evidence at a rehearing. It simply says, "In a rehearing on sentence only, the procedure shall be the same as in an original trial ...", R.C.M. 810(a)(2), and that "[s]entences at rehearings ... shall be adjudged within the limitations set forth in R.C.M. 1003." R.C.M. 810(d)(1).

Only one reported case directly addresses the question presented in this case. In that 1958 case, the Air Force Board of Review said the trial judge had erred by ruling that "anything that occurred subsequent to ... the time the first sentence was adjudged could not be considered in determining the sentence on rehearing," and held that "[m]atters in mitigation occurring up to the time of sentence may be considered. Evidence in aggravation of the offense may also be introduced." *United States v. Rivers*, 27 C.M.R. 949, 951, 1958 WL 3586 (A.F.B.R.1958) (citation omitted).

More generally, an accused has a broad right to present mitigation. *United States v. Perry*, 48 M.J. 197, 199 (C.A.A.F.1998); *United States v. Becker*, 46 M.J. 141, 143 (C.A.A.F.1997)(citing *United States v. Combs*, 20 M.J. 441, 442 (C.M.A.1985)). Further, while not directly on point, insofar as the Rules define mitigation to include evidence furnishing grounds for a clemency recommendation, we note our superior court has held that, when a case is remanded for a new CA's action, a CA may consider changes in circumstance following the initial action, for the purpose of determining whether clemency is warranted. *United States v. Rosenthal*, 62 M.J. 261, 262–63 (C.A.A.F.2005).

Military law recognizes five principle purposes for court-martial sentences: (1) protection of society; (2) punishment; (3) rehabilitation; (4) preservation of good order and discipline; and (5) deterrence. *See* Military Judges' Benchbook, Dep't of the Army Pamphlet 27–9, ¶ 2–5–21 (15 Sep 2002); FRANCIS

A. GILLIGAN & FREDRIC I. LEDERER, 2 Court-Martial Procedure § 23–13.00 (2d ed.1999). *See also*, R.C.M. 1001(g).

The military judge in this case acknowledged the *Rivers* case, but cited the Federal Sentencing Guidelines as more persuasive. In particular, he cited a provision prohibiting use of rehabilitative efforts by a defendant after imposition of imprisonment to justify a downward departure from the Guidelines when resentencing a defendant. AE XC (citing United States Sentencing Guidelines § 5K2.19 (2000)).

We review a military judge's decision to exclude evidence for an abuse of discretion. A military judge abuses his discretion if his decision is based on an erroneous view of the law. *United States v. Griggs*, 61 M.J. 402, 406 (C.A.A.F.2005); *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F.2003); *Becker*, 46 M.J. at 143.

Error may not be predicated upon a ruling excluding evidence unless the ruling materially prejudices the appellant's substantial rights, and the substance of the evidence was made known to the military judge by an offer of proof, or was apparent from the context. MILITARY RULE OF EVIDENCE 103(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.). Failure to comply with Mil. R. Evid. 103(a) does not prevent this court from taking notice of plain error that materially prejudices the appellant's substantial rights. MIL. R. EVID. 103(d); *see United States v. Finster*, 51 M.J. 185, 187 (C.A.A.F.1999); *United States v. Powell*, 49 M.J. 460, 463 (C.A.A.F.1998). To constitute plain error, an error must be both obvious and substantial, and have such a prejudicial impact that a miscarriage of justice would result if the error were not corrected. *United States v. Jackson*, 38 M.J. 106, 111 (C.M.A.1993); *United States v. Zaptin*, 41 M.J. 877, 880 (N.M.Ct.Crim.App.1995).

Further, an appellant may not complain of an error which he himself invited. *United States v. Anderson*, 51 M.J. 145, 153 (C.A.A.F.1999); *United States v. Raya*, 45 M.J. 251, 254 (C.A.A.F.1996); *United States v. Schnitzer*, 44 M.J. 380, 384, 386 (C.A.A.F.1996)(Everett, S.J. and Gierke, J.,

concurring in the result); *see United States v. Resch,* 65 M.J. 233 (C.A.A.F.2007)(Stuckey, J., concurring in part and dissenting in part); *see also United States v. Herrera,* 23 F.3d 74, 75 (4th Cir.1994).

## C. Analysis

### 1. Did the Military Judge Err?

■ Based on the RULES FOR COURTS-MARTIAL, recognized military sentencing principles and the persuasive authority of *Rivers* and *Rosenthal,* and considering the practical difficulties in limiting evidence on resentencing to facts in existence prior to a certain date, we conclude the military judge erred by excluding evidence of facts arising after 22 September 1995. Although we review a military judge's decision to exclude evidence for abuse of discretion, we find the military judge's ruling was based on an erroneous view of the law.

■ The RULES FOR COURTS-MARTIAL do not impose any temporal limit on the evidence at a rehearing on sentence, and must be read in light of judicial decisions, such as *Perry, Becker* and *Combs,* establishing a "broad right" to present mitigation evidence. Further, our superior court's decision in *Rosenthal,* together with a definition of "mitigation" that includes evidence furnishing "grounds for a recommendation of clemency," cause us to conclude it is error to put a temporal limit on the evidence at a rehearing on sentence. Likewise, considering all aggravation and mitigation up to the time of re-sentencing advances the recognized purposes of criminal sentences. At a minimum, the facts existing at the time of re-sentencing are relevant to the protection of society, the rehabilitation of the wrongdoer, and the preservation of good order and discipline.

Further, we are convinced that attempting to exclude evidence of facts arising after the date of the original sentence is fraught with practical problems that make such a rule difficult, and ultimately capricious, to implement. The difficulty is obvious in this very case. For example, the military judge excluded testimony by the appellant's daughter concerning the reasons some of her siblings were unable to travel to the rehearing on the

grounds that, in 1995, the entire family lived in the local area and such an issue would not have arisen. Later, the appellant's father testified about his *current* health and need for assistance without objection, but was prohibited from saying whether he had been in communication with the appellant during his years of incarceration. The appellant's son, a major in the Army, testified about his current grade and military duties, though he was only a newly commissioned second lieutenant at the time his father was originally sentenced. Time marches on, and as much as it may make some theoretical sense to attempt to limit evidence on resentencing to facts in existence at the time of the original sentencing, it is essentially impossible to turn the clock back. In our view, it is much fairer, easier to administer, and more consistent with the language and spirit of the Rules to admit all relevant evidence occurring up to the time of rehearing on sentence, as the Air Force court did in *Rivers.*

Finally, we are not persuaded that the Federal Sentencing Guidelines should suggest a different conclusion. In adopting Guideline § 5k2.19, cited by the military judge, the United States Sentencing Commission was attempting, in part, to respect Congressional intent in enacting a complex overhaul of federal criminal sentencing and parole policy. 18 U.S.C.S. Appx § 5K2.19, Commentary. Federal civilian sentencing procedures, however, are vastly different from military sentencing procedures, and we conclude they are of little use in deciding the correct resolution of the question presented in this case.

### 2. Forfeiture and Prejudice

Having concluded the military judge erred in excluding evidence of facts arising after 22 September 1995, we must next decide whether the appellant has forfeited any claim of error, and if not, whether those errors were harmless.

The appellant complains of four instances in which he was denied the opportunity to present mitigation evidence: (1) testimony by Catherine Hollomon concerning the reason some of her siblings were not able to attend the rehearing; (2) testimony by Ms.

Hollomon concerning what it would mean to the Davis family to have the appellant home again; (3) testimony by Ms. Hollomon and Maj Davis on the impact of the appellant's incarceration on their lives; and (4) large parts of LtCol Davis' testimony, including testimony concerning the death of the appellant's mother, and his own weakening condition. Appellant's Supplemental Brief and Assignment of Errors of 28 Dec 2006, at 5–6, 8.

■ First, we conclude the appellant invited the error in this case by advocating the exclusion of facts arising after 22 September 1995, and affirmatively representing that such a ruling would not be inconsistent with his intended mitigation evidence. Record at 694–95. Having invited the error, the appellant may not now complain he was harmed by it. See Anderson, 51 M.J. at 153; Raya, 45 M.J. at 254.

■ Second, the appellant forfeited any claim of error with respect to forgone testimony by Ms. Hollomon, Maj Davis, and LtCol Davis by failing to make any offers of proof as required by Mil. R. Evid. 103(a). Although we could take note of these alleged errors under Mil. R. Evid. 103(d), we conclude that, under the specific facts of this case, any error did not have such a prejudicial impact that a miscarriage of justice would result if the error were not corrected. Accordingly, it is inappropriate to invoke the plain error doctrine here.

Further, we disagree with the appellant's contention that he was denied Ms. Hollomon's testimony on what it would mean to have the appellant home. The military judge *overruled* the Government's objection to Ms. Hollomon's testimony on that point, and she testified on that subject. Record at 894. Likewise, our review of the record reveals that the appellant was not denied LtCol Davis' testimony concerning the death of the appellant's mother and his own weakening condition. LtCol Davis testified about both those subjects. *Id.* at 879–85.

■ Finally, even putting aside the concepts of invited error and forfeiture, we conclude the appellant was not materially prejudiced by the exclusion of this testimony. First, we note the military judge's ruling also prevented evidence in aggravation arising after 22 September 1995 (which, presumably, is why the appellant asked the judge to exclude evidence of facts not in existence as of 22 September 1995). Second, we are satisfied that, even if the excluded and/or foregone testimony had been presented, the sentence would not have been any less than that adjudged by the members and approved by the CA. *See United States v. Moffeit,* 63 M.J. 40 (C.A.A.F.2006); *United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

We, therefore, conclude that the appellant's first assignment of error does not warrant relief.

### III. Speedy Review

The appellant also argues he has been denied speedy post-trial review following re-sentencing on 29 June 2006. In this case, the record of the rehearing was authenticated on 25 August 2006. The CA took action on 13 November 2006, and the case was docketed with this court on 29 November 2006, 153 days after conclusion of the rehearing.[1] Briefing was completed and the case submitted to panel for decision on 31 January 2007.

### A. The Law

■ We consider four factors in determining if post-trial delay violates the appellant's due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely appeal; and (4) prejudice to the appellant. *United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F.2004)). If the length of the delay is reasonable, no further inquiry is necessary. For courts-martial completed on or after 10 June 2006, however, delay greater than 120 days between completion of trial and the convening

---

1. In his brief, the appellant mistakenly states that 153 days elapsed between the conclusion of the rehearing and the convening authority's action. Appellant's Brief and Assignment of Errors at 10.

In fact, 137 days elapsed between the conclusion of the rehearing and the convening authority's action; 153 days is the time between conclusion of the rehearing and docketing at this court.

authority's action is presumptively unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F.2006). Once the delay is determined to be unreasonable, the court must balance the length of the delay against the other three factors. *Toohey*, 60 M.J. at 102; *Jones*, 61 M.J. at 83. In extreme cases, the delay itself may "give rise to a strong presumption of evidentiary prejudice." *Id.* (quoting *Toohey*, 60 M.J. at 102).

■ With respect to the fourth factor, we evaluate prejudice to the appellant in light of three interests: (1) preventing oppressive incarceration pending appeal; (2) minimizing anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limiting the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired. *United States v. Toohey*, 63 M.J. 353, 361 (C.A.A.F.2006)(hereinafter *Toohey II*)(quoting *United States v. Moreno*, 63 M.J. at 138 (C.A.A.F.2006)(quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n. 8 (5th Cir.1980))). The appellant must show particularized anxiety or concern distinguishable from the normal anxiety experienced by convicted persons awaiting an appellate decision, and that the anxiety or concern is related to the delay. *Id.* at 138.

**B. Analysis**

■ Because the rehearing in this case was completed 19 days after the presumption set out in *Moreno* became effective, and because more than 120 days elapsed between resentencing and the CA's action, the delay in this case is presumptively unreasonable, and we must proceed to balance the four factors set out above. The total delay from sentencing to docketing was 153 days. Of that time, 57 days were consumed in preparing and authenticating the record. Another 80 days were consumed in preparing the staff judge advocate's recommendation (SJAR), reviewing the clemency matters submitted by the appellant, and preparing the CA's action. Once the CA acted, the record was docketed with this court in 16 days, and fully briefed within 63 days.

In the SJAR, the staff judge advocate (SJA) explicitly addressed the length of the delay up to that point. He explained the record of trial was lengthy and involved complex issues. The trial defense counsel's clemency submission also said the case "presented nuanced areas of law that required a lengthy, and often contentious, legal debate." LCDR C.L. Chmielewski, USCG ltr 5800/02 of 9 Nov 2006, at 2. On appeal, the appellant asserts the SJA should have reviewed those portions of the record involving the original proceedings prior to receiving the full, authenticated record, cutting down the time necessary for review once the record of the rehearing was authenticated. We reject this contention, and find it was entirely appropriate for the SJA to wait until he had the full, final, and authenticated record to conduct his review. Further, given the long history and complex issues presented in this case, we conclude the CA acted with reasonable dispatch in this case. Further, the delay was not so extreme as to give rise to a presumption of evidentiary prejudice.

Next, we turn to the third and fourth factors. The appellant did not assert his right to speedy review prior to filing his appellate brief. While we do not hold this failure against the appellant, neither does this factor weigh in his favor. Finally, after evaluating the question of prejudice in light of the three interests identified in *Toohey II* and *Moreno*, and set out above, we find no prejudice to the appellant.

Balancing the four factors, we conclude the appellant's due process right to speedy post-trial review has not been violated.

We are aware of our authority to grant relief under Article 66(c), UCMJ, but decline to do so. *Toohey*, 60 M.J. at 102; *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *United States v. Brown*, 62 M.J. 602 (N.M.Ct.Crim.App.2005)(en banc).

**Conclusion**

For the foregoing reasons, we affirm the sentence, as approved by the convening authority.

Chief Judge RITTER and Senior Judge FELTHAM concur.